United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CITY AND COUNTY OF SAN FRANCISCO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., <br><br> Defendants. | No. C 12-0711 RS <br><br> **ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

In this action, plaintiff the City and County of San Francisco ("the City") seeks declaratory and injunctive relief to compel the United States Department of Transportation, through the federal Pipeline and Hazardous Materials Agency ("PHMSA"), to exercise more stringent oversight of the California Public Utilities Commission ("CPUC") with respect to the CPUC's delegated responsibility to enforce federal natural gas pipeline safety standards in California. The City's original complaint was framed as a citizen's suit under the Natural Gas Pipeline Safety Act, Pub. L. 90-481, 82 Stat. 720 ("PSA"). Those claims were dismissed, but the City was given leave to amend to attempt to state a claim under the Administrative Procedures Act ("APA"). Defendants now move to dismiss the Amended Complaint, contending the City has failed to allege the narrow kinds of agency action or inaction that would be subject to judicial review under the APA.

1

## II. BACKGROUND

Prior to 1968, regulation of natural gas pipelines was left entirely to the states. That year, Congress enacted the Natural Gas Pipeline Safety Act, Pub. L. 90-481, 82 Stat. 720 ("PSA") "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities." 49 U.S.C. § 60102(a)(1). Pursuant to that law and subsequent amendments, the Secretary of Transportation has delegated authority to PHMSA to adopt minimum safety standards for the design, construction, testing, operation and maintenance of natural gas and hazardous liquid pipelines. 49 C.F.R. § 1.53. See 49 C.F.R. parts 190-99. Under the regulatory scheme, states may assume responsibility for regulating intrastate gas pipeline facilities by submitting an annual certification to the Secretary pursuant to section 5 of Pub. L. No. 90-481 (originally codified at 49 U.S.C. § 1674; currently codified as amended at 49 U.S.C. §60105). If a state does so, the Secretary is prohibited from enforcing safety standards or practices for intrastate gas pipelines in that state. *Id.* If the Secretary determines, however, that a state is not "satisfactorily enforcing compliance" with the federal standards, he has the discretion to reject the certification or take other appropriate action to achieve adequate enforcement, including asserting federal jurisdiction over intrastate facilities. *Id.*

Since the 1970s, California has, through the CPUC, submitted an annual certification to the Secretary to regulate all intrastate natural gas pipelines in the state, except for certain pipelines that are beyond the scope of its authority, which remain subject to federal regulation. The submission of that certification makes CPUC eligible to receive federal funding for up to 80% of the costs reasonably required to administer its pipeline safety program pursuant to 49 U.S.C. § 60107(a)(1). In this action, the City complains, in essence, that the federal regulators have abdicated their responsibility to exercise sufficient oversight to ensure that the CPUC is complying with its duties under the certification to enforce federal pipeline safety standards in California.

The City alleges that as a consequence of inadequate federal oversight, the CPUC has allowed the Pacific Gas & Electric Company ("PG&E") to violate minimum federal safety standards "blatantly," which in turn has led to numerous catastrophic events, including the pipeline explosion

2

in San Bruno, California in 2010.  The San Bruno explosion and resulting fire killed eight people, injured fifty, and destroyed or damaged more than one hundred homes.  The City also points to a 2008 pipeline explosion in Rancho Cordova, California that killed one and injured five, and an incident in Cupertino, California in 2011 that caused extensive property damage.

Alleging that further such incidents are inevitable, and that persons and property within the City and County of San Francisco are therefore facing an imminent risk of harm, the City seeks declaratory and injunctive relief.  Specifically, the City requests an injunction requiring the Secretary, the Department of Transportation, PHMSA, and its administrator (1) to "comply with their duty to oversee certified state authorities and to ensure that federal pipeline safety standards are enforced;" (2) to cease "improperly delegating their authority to do so to gas pipeline operators like PG&E," and; (3) "to only disburse federal funds to a state authority that are reasonably required to carry out a pipeline safety program in compliance with the authority's certification to PHMSA."  The amended complaint also includes other formulations of requested declaratory and injunctive relief in essentially the same vein, with more details, and more tailored to echo the language of APA actions.

The amended complaint contains four claims for relief.  The first two are those from the original complaint brought directly under the PSA, as to which leave to amend was *not* granted.  The City explains that it has repleaded them merely to preserve its appellate rights, and does not seek to defend them in its opposition to the present motion to dismiss.  Accordingly, those claims will again be dismissed, without leave.   The City's third claim for relief  is brought under section 706(1) of the APA, 5 U.S.C. § 706(1), and asserts that defendants have "unlawfully withheld" "agency action."  The fourth claim for relief invokes section 706(2) of the APA, 5 U.S.C. § 706(2), and claims defendants' conduct has been "arbitrary, capricious and an abuse of discretion."

### III. LEGAL STANDARD

Defendants' motion invokes both  Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In challenging the original complaint, defendants relied on Rule 12(b)(1) at least in part because they were arguing that the City lacked standing, thereby depriving the Court of

3

jurisdiction. In the present motion, defendants have not clearly articulated why either or both of the rules apply, but the gravamen of their motion is that the City has failed to state a claim, an argument sounding primarily under Rule 12(b)(6).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Rule 12(b)(1) is also relevant, however, because absent a tenable APA claim, there is no subject matter jurisdiction to review alleged agency inaction. *See Ecology Center, Inc. v. United States Forest Service,* 192 F.3d 922, 926 (9th Cir. 1999). A motion to dismiss for lack of subject matter jurisdiction may be made on the grounds that the lack of jurisdiction appears from the "face of the complaint," or may be based on extrinsic evidence apart from the pleadings. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *McMorgan & Co. v. First Cal. Mortgage Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995).

## IV. DISCUSSION

A. Section 706(1)

There is no dispute that a claim under §706(1) of the APA "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take* . . . . [C]ourts do not have the authority to enter general orders compelling compliance with broad statutory mandates." *Gros Ventre Tribe v. United States,* 469 F.3d 801, 814 (9th Cir. 2006) (emphasis in original, internal citations and quotes omitted)). "§ 706(1) empowers a court to compel an agency only 'to perform a ministerial or non-discretionary act.'" *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

Defendants contend the amended complaint runs afoul of this principle because, at heart, the City is merely leveling a "broad attack on a Federal program for allegedly failing to achieve its

4

1   general statutory objectives," which is impermissible under *Norton. See id.* at 64.  Defendants argue
2   that the amended complaint's multiple references to "mandatory" duties are only labels and legal
3   conclusions, which can and should be disregarded.  Apart from those conclusory assertions,
4   defendants contend, the amended complaint identifies *no* ministerial act or non-discretionary duty
5   that they have allegedly failed to perform.

6   The City, in turn, insists it has adequately alleged that the Secretary is charged with two non-
7   discretionary duties: (1) the duty to decide whether a State authority is satisfactorily enforcing
8   federal pipeline safety standards before accepting a State certification of enforcement or disbursing
9   federal funds; and (2) the duty to take "appropriate action to achieve adequate enforcement,"
10  applicable if the Secretary decides that a State authority is not satisfactorily enforcing those safety
11  standards.  The City argues a tenable APA claim arises from "[d]efendants' wholesale abdication of
12  their duty to ensure that State authorities are actually enforcing federal safety standards through the
13  promulgation of a minimum standard setting the benchmark for state agency performance."

14  The City relies on a Tenth Circuit decision, *Estate of Smith v. Heckler*, 747 F.2d 583 (10th
15  Cir. 1984), in which the plaintiffs challenged the approach of the Secretary of Health and Human
16  Services to reviewing the adequacy of states' certifications that care given to Medicaid recipients in
17  those states met federal standards.[1]  Defendants respond that *Estate of Smith* is distinguishable, on
18  grounds that the requirements imposed by the Medicaid Act on the Secretary were, in defendants'
19  view, more detailed and specific than those imposed by the PSA.  Defendants also argue that the
20  Tenth Circuit's approach to the APA has not been consistent with that of the Ninth Circuit, and that
21  *Estate of Smith* predates the Supreme Court's broader enunciation of the governing principles in
22  *Norton.*

23  More fundamentally, defendants argue that, contrary to the City's underlying premise, they
24  in fact do evaluate the adequacy of the CPUC's enforcement of federal pipeline safety standards.

25

---

26  [1] This Tenth Circuit decision should not be confused with the better-known Supreme Court
27  decision, *Heckler v. Chaney*, 470 U.S. 821 (1985), which held that an agency's decision not to take enforcement action is not subject to judicial review.  Defendants rely on *Heckler v. Chaney* insofar
28  as the City's claims can be characterized as a challenge to their failure to take enforcement actions.

Defendants point to 49 C.F.R. Part 198 which sets forth the performance factors they purportedly use to determine whether States are satisfactorily carrying out a pipeline safety program and whether, or to the extent which, PHMSA should provide grants-in-aid to assist the States in carrying out their state pipeline programs under 49 U.S.C. § 60107.  These factors include, the "quality of state inspections, investigations, and enforcement/compliance actions."  49 C.F.R. § 198.13(c).

Defendants have also pointed to permissive language in the PSA (i.e., repeated use of the term "may") regarding actions the Secretary is authorized to take to ensure compliance with federal standards.  That language is not dispositive, however, because defendants cannot and do not argue that the Secretary has *no* mandatory duty to oversee state enforcement efforts.  Indeed, defendants implicitly recognize as much, by contending instead that the ultimate deficiency in the City's complaint is that it is a challenge to *how* defendants are carrying out their duties, rather than a legitimate claim of a failure to act.

On that point, defendants have the better argument.  Section 706(1) does not provide a vehicle for bringing "complaints about the sufficiency of an agency action 'dressed up as an agency's failure to act.'" *Ecology Center,* 192 F.3d at 926 (quoting *Nevada v. Watkins*, 939 F.2d 710, 714 n. 11 (9th Cir. 1991)).  Notwithstanding the City's characterizations of its allegations, it "has not pleaded a genuine § 706(1) claim." *Id.* at 926.  Accordingly the motion to dismiss must be granted as to the third claim for relief.  As there is no suggestion that other or additional facts could be pleaded that would alter the fundamental and untenable nature of the claim the City is attempting to bring, leave to amend will not be granted.

B.  Section 706(2)

While not every claim under section 706(2) would be coextensive with a section 706(1) claim, in this instance the City's attempt to recast the same facts into a theory that defendants have acted arbitrarily and capriciously adds nothing of substance.  Accordingly, the fourth claim for relief must also be dismissed, without leave to amend.

## V. CONCLUSION

The motion to dismiss is granted. A separate judgment will issue.

IT IS SO ORDERED.

Dated: 2/28/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE